# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 22

### OCTOBER TERM, A.D. 2014

### February 19, 2015

BASIC ENERGY SERVICES, L.P.,

Appellant
(Plaintiff),

v.

PETROLEUM RESOURCE
MANAGEMENT, CORP., and PRM
PARTNERS I, LLC,

Appellees
(Defendants).

S-14-0088

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
> Gregory C. Dyekman and Justin N. Hesser of Dray, Dyekman, Reed & Healey, P.C., Cheyenne, Wyoming. Argument by Mr. Dyekman.

*Representing Appellees:*
> Scott P. Klosterman of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    In this dispute over equipment damaged in an oil well fire, the district court granted summary judgment to the owner and operator of the well and against the equipment owner, Basic Energy Services, L.P. (Basic Energy).  The district court found that neither the owner nor the operator of the well could be held liable for the actions of the independent contractor hired to perform the day-to-day operations of the well.  The district court also found that, though there was a valid contract between the operator Petroleum Resource Management, Corp. (PRM) and Basic Energy, PRM did not breach the terms of that contract.  We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

## *ISSUES*

[¶2]    The parties raise four issues on appeal, which we restate as follows:

1.    The district court determined that the Daily Work Ticket created a valid and enforceable contract between PRM and Basic Energy.  Is there a question of material fact concerning whether PRM breached the terms of that contract?

2.    Did PRM have a duty to use reasonable care in hiring Hot Oil Services, Inc. (Hot Oil) as its independent contractor?

3.    Did Basic Energy raise the issue of apparent agency in the district court?

4.    Should the well owner, PRM Partners I, LLC (PRM Partners), be dismissed from the appeal?

## *FACTS*

[¶3]    PRM Partners is a leaseholder of lands which cover an oil well identified as Fuller Federal No. 5-18 (No. 5-18) near Shoshoni, Wyoming.  PRM Partners designated PRM[1] as operator of No. 5-18 on January 1, 2000.  PRM later contracted with Hot Oil to "furnish all necessary labor and equipment to perform in a good and workmanlike manner the pumping services . . . on [No. 5-18.]"[2]  The Well Pumping Contract between PRM and Hot Oil declared:

> In the performance of the services hereunder, Contractor shall
> act as, and conclusively be for all purposes, an independent

---

[1] PRM is the managing partner of PRM Partners.
[2] Hot Oil had a long relationship with PRM, providing hot oil services to the Fuller Field prior to becoming PRM's "contract pumper" through the Well Pumping Contract.

1

contractor free and clear of any dominion or control by PRM of the manner in which such services are to be performed, it being understood that PRM is interested only in the final results obtained.

The district court held that Hot Oil was an independent contractor, and this finding was not appealed.

[¶4] Hot Oil managed the day-to-day operations of the well at the "field level" on behalf of PRM, which included:

[M]aximizing production . . . , switching tanks, treating oil and gas as necessary to place it in merchantable condition; preparing daily gauge and production reports and delivering same to PRM; making pipeline deliveries; operating, lubricating and maintaining mechanical equipment supporting the operation of the [well]; policing and upkeeping the leases on which the [well is] located and making such adjustments, repairs and performing such services as are customarily made or performed by a lease pumper, as well as such particular lease operating, maintenance or operational services as may be periodically requested by PRM.

In addition, Hot Oil often engaged other independent contractors to perform services on various wells covered by the contract, including No. 5-18. In such situations, Hot Oil would contact an independent contractor to provide services, approve of the work performed by a signature on the invoice, and the invoice would be forwarded to PRM, which would then make payment directly to the independent contractor. Basic Energy was one such independent contractor, which provided services and received payment in the manner described.[3]

[¶5] In the fall of 2009, Hot Oil requested that Basic Energy perform workover operations[4] on No. 5-18. In preparation, Basic Energy moved its workover rig, Taylor

---

[3] Basic Energy had a long-standing business relationship with both PRM and Hot Oil, performing a number of services on PRM's wells. Each time Basic Energy provided services, the transaction took place as described in ¶ 4.

[4] The Wyoming Oil and Gas Conservation Commission (WOGCC) defines "workover" as:

Any downhole operation in an existing oil or gas well that is designed to sustain, restore or increase the production rate or ultimate recovery in a geological interval currently completed or producing in said existing oil or gas well. Workover includes, but is not limited to, acidizing, reperforating, fracture, treating, sand/paraffin removal, casing repair, squeeze cementing, or setting bridge plugs to isolate water productive zones from oil or gas productive zones, or any combination thereof.

2

Rig No. 1658, onto No. 5-18.  The following Monday, a crew from Basic Energy arrived at No. 5-18 to assist[5] in performing the workover operations.  While the evidence as to what occurred during the workover operations is conflicting, it is undisputed that oil began flowing out of the wellhead onto the surface, and within minutes, a fire erupted.  The fire damaged various pieces of equipment, including Basic Energy's workover rig, which is at the heart of this dispute.

[¶6]    Later, Basic Energy submitted a Daily Work Ticket to PRM for payment.  The Daily Work Ticket, which incorporated a number of terms and conditions, invoiced PRM for seven-and-a-half hours of rig and crew labor and one hour of travel, for a total of $2,050.00.  It did not, however, include a statement of the damages to Basic Energy's equipment.  PRM ultimately paid the amount of the invoice to Basic Energy.

[¶7]    Basic Energy filed suit against PRM Partners, PRM, and Hot Oil[6] to recover the damage to its equipment.  All defendants timely answered Basic Energy's complaint, and the parties engaged in discovery.  PRM Partners and PRM filed a joint motion for summary judgment, and the district court found that there were no genuine issues of material fact, and that PRM Partners and PRM were entitled to judgment as a matter of law.  The district court's decision was premised, in large part, on its finding that Hot Oil was an independent contractor and neither PRM nor PRM Partners could be held liable for the acts of an independent contractor.  After the district court entered its summary judgment order, Basic Energy and Hot Oil stipulated to a dismissal of Basic Energy's claims against Hot Oil without prejudice.  Basic Energy timely appealed.

*STANDARD OF REVIEW*

[¶8]    "We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court.  Thus, our review is plenary." *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 8, 148 P.3d 8, 12 (Wyo. 2006) (internal citations omitted).  Pursuant to W.R.C.P. 56(c), summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  A genuine issue of material fact exists when a disputed fact, if proven, "would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon Cnty.*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo. 2004) (quoting *Metz Beverage Co. v. Wyo. Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002)).

---

Workover does not mean the routine maintenance, repair, or replacement of downhole equipment such as rods, pumps, tubing, packers or other mechanical devices.

WOGCC Rules & Regulations, Chapter 1 § 2(lll) (2014).
[5] Two employees from Hot Oil were also on site performing tasks in the workover operations.
[6] Hot Oil was not insured at the time of the accident, in spite of a provision in the Well Pumping Contract requiring that Hot Oil maintain insurance.

[¶9]   Upon review, we consider the evidence in the light most favorable to the party opposing the summary judgment motion, and "give that party the benefit of all favorable inferences which may be fairly drawn from the record." *Hatton*, 2006 WY 151, ¶ 8, 148 P.3d at 12 (quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo. 2005)). Questions of law, however, are reviewed *de novo*. *Id.*

[¶10] The initial burden of establishing a *prima facie* case for summary judgment lies with the moving party. *Id.* at ¶ 9, 148 P.3d at 12. Once that burden is met, the party opposing summary judgment must present "competent evidence admissible at trial showing there are genuine issues of material fact." *Id.* (quoting *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 890 (Wyo. 2006)). "The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely upon allegations and pleadings . . . , and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden." *Id.*

## DISCUSSION

### I.   The district court determined that the Daily Work Ticket created a valid and enforceable contract between PRM and Basic Energy.  Is there a question of material fact concerning whether PRM breached the terms of that contract?

[¶11]  In its decision letter, the district court stated, "The Court finds and concludes that no genuine issues of material fact exist that the Daily Work Ticket, which includes the attached Terms and Conditions, is a valid and enforceable contract and PRM and Basic Energy are bound thereby." The court went on to determine that "PRM has not breached any term or condition of the Daily Work Ticket" and granted summary judgment in favor of PRM. We affirm in part and reverse in part.

[¶12]  Neither party appeals the district court's determination that the Daily Work Ticket created a valid and enforceable contract between PRM and Basic Energy. We therefore consider only whether there exists a genuine issue of material fact that PRM breached the terms of the Daily Work Ticket.

[¶13] Basic Energy cites two distinct provisions of the Daily Work Ticket which it claims PRM breached. The first states, "[PRM] shall provide or reimburse the cost of any safety/health equipment required for [PRM's] operations which exceed [Basic Energy's] routine safety practices for area." Basic Energy argues that PRM breached the contract by failing to provide safety equipment, namely a blowout preventer (BOP), which would have prevented oil from leaking from the well, thus causing the fire. Basic Energy presented undisputed evidence that it was not within its routine safety practices to furnish BOPs when providing workover services on wells in the area, unless requested by the company for which the services were being provided. Neither Hot Oil nor PRM

4

requested that Basic Energy come equipped with a BOP when providing workover services on No. 5-18 that day. Because the BOP was not within the routine safety equipment normally provided by Basic Energy in that area, under the contract terms, if a BOP was required for the workover services on No. 5-18, it was PRM's duty to provide it. It is uncontested that PRM did not provide a BOP.

[¶14] The question, however, is whether a BOP was required under these circumstances. PRM provided no evidence or argument concerning whether a BOP was required on No. 5-18 for the workover operations. As the summary judgment movant, the burden rested with PRM to establish a *prima facie* case demonstrating that there were no genuine issues of material fact and that PRM was entitled to judgment as a matter of law. *Hatton*, 2006 WY 151, ¶ 9, 148 P.3d at 12; *see also Baker v. Speaks*, 2013 WY 24, ¶ 58, 295 P.3d 847, 860-61 (Wyo. 2013) (finding that summary judgment was inappropriate as the movant failed to establish a *prima facie* case). PRM failed to carry its burden by neglecting to address the issue of whether a BOP was required for the workover services on No. 5-18. The district court therefore erred when it entered summary judgment in favor of PRM on this issue.

[¶15] Basic Energy next argues that PRM breached a separate provision stating, "Damage to or loss of [Basic Energy's] equipment or tools caused by the condition of the well will be billed to [PRM] at repair or replacement cost." The contractual language plainly places the burden on Basic Energy to bill[7] PRM for the damaged equipment. The evidence is undisputed that no such bill was ever presented, thus there exists no genuine issue of material fact. The burden was clearly on Basic Energy to provide PRM with a bill, and Basic Energy conceded at oral argument that no such bill or ticket was ever presented to PRM. Because there exists no genuine issue of material fact as to whether Basic Energy billed PRM for the "repair or replacement cost" of the damaged equipment, PRM was entitled to judgment as a matter of law.

[¶16] We affirm the district court's grant of summary judgment to PRM on the issue of whether PRM breached the portion of the Daily Work Ticket requiring Basic Energy to bill PRM for the repair or replacement cost of damaged equipment. We reverse and remand on the provision of the Daily Work Ticket addressing the provision of safety or health equipment.

---

[7] "Bill" means "[t]o present a statement of charges or costs to." *Webster's II New College Dictionary* 112 (3d ed. 2005).

## II. Did PRM have a duty to use reasonable care in hiring Hot Oil as its independent contractor?

[¶17]  On appeal, Basic Energy argues that the district court erred when it found that PRM had no duty to Basic Energy.  The district court, relying on this Court's precedent, found that because PRM employed Hot Oil as an independent contractor, PRM was not liable for Hot Oil's actions.  We reverse and hold that the district court erred in entering summary judgment on this issue as PRM failed to carry the initial burden of a summary judgment movant.

[¶18]  In its complaint against PRM, Basic Energy alleged "Negligence and Breach of Contract."  Instead of systematically setting forth separate paragraphs for each claim, Basic Energy provided a general laundry list of PRM's wrongful conduct.  While such pleading is permissible under W.R.C.P. 8, it increases the difficulty for the district court in trying to discern the precise causes of action presented.  Nevertheless, Basic Energy did allege a negligent hiring claim against PRM for retaining Hot Oil as its independent contractor.[8]  Moreover, it is clear that PRM had notice of this claim.  At the hearing on PRM's motion for summary judgment, PRM stated, "[T]hey argue that . . . [PRM] was negligent in retaining Hot Oil to act as the pumper that was pumping . . . .  They also bring claims that [PRM] breached its duty when it hired unqualified, untrained or incompetent employees or contractors."  PRM, however, did not address the allegation that PRM negligently hired Hot Oil in its summary judgment filings or at the hearing.[9]

[¶19]  PRM contends that Basic Energy argues this issue for the first time on appeal, and that we are therefore precluded from considering it.  PRM misconstrues the burden-shifting standard for summary judgment proceedings.  The burden was not on Basic Energy, the non-moving party, to present argument on the issue in the first instance.  *See Roybal v. Bell*, 778 P.2d 108, 114 (Wyo. 1989) ("Since [movant] failed to properly support his motion for summary judgment, [non-movant] was entitled to rely upon her allegation . . . , and she had no obligation to present any factual support[.]"); *Metzger v. Kalke*, 709 P.2d 414, 423 (Wyo. 1985) ("Absent a showing of specific facts probative of [movants'] right to judgment [non-movants] had no obligation to support their complaint with expert testimony."); *see also Mitseff v. Wheeler*, 526 N.E.2d 798, 802 (Ohio 1988)

---

[8] Basic Energy alleged, "PRM materially breached its common law and/or contractual duties to Basic Energy when it failed to exercise reasonable care in . . . negligently retain[ing] defendant Hot Oil to act as its agent and/or servant[.]"  It further pled, "PRM also owed a common law duty directly to Basic Energy and the general public to **hire**, supervise, train and/or retain competent employees (including subcontractors and and/or consultants), commensurate with the risk involved, breaching that duty when it hired unqualified, untrained and/or incompetent employees and/or contractors with defendant Hot Oil to operate, maintain and/or use their hot oil truck in a reckless manner."  (Emphasis added.)

[9] PRM did discuss the issue of whether PRM Partners negligently hired PRM in its brief supporting its summary judgment motion, while it ignored a similar allegation made in the amended complaint that PRM negligently hired Hot Oil.

6

("A party seeking summary judgment must specifically delineate the basis for which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond."). Instead, the burden rested with PRM to present a *prima facie* case demonstrating that there were no genuine issues of material fact related to the negligent hiring claim pled against PRM. Only then would the burden have shifted to Basic Energy. PRM presented no argument concerning the allegation it was negligent in hiring Hot Oil. PRM failed to carry its burden, thus summary judgment on this issue was improper.

[¶20] Although the parties did not address the issue, the district court did. The court granted summary judgment in favor of PRM on the negligent hiring claim despite the parties' failure to raise the issue in their summary judgment filings.[10] In *Union Pacific Railroad Company v. Caballo Coal Company*, 2011 WY 24, ¶ 29, 246 P.3d 867, 874 (Wyo. 2011), the district court *sua sponte* entered summary judgment dismissing a counterclaim asserted by the defending party. We reversed the district court stating, "Rule 56 clearly contemplates a motion and full adversary proceedings before a summary judgment is granted. There is no specific provision allowing for a district court to grant a summary judgment *sua sponte*." *Id.* at ¶ 31, 246 P.3d at 875. We went on to explain:

> The basic premise . . . is to require a full presentation of the issue to the district court before judgment is rendered. In this case, neither party filed a motion for summary judgment or presented any evidence or argument on the issue of whether [the defendant's] counterclaim . . . was appropriate. . . . Thus, the district court violated the procedures set forth in Rule 56 and deprived [the defendant] of its due process right to notice and an opportunity to be heard when it granted summary judgment on [the defendant's] counterclaim.

*Id.* at ¶ 33, 246 P.3d at 875-76. *See also, Jenkins v. Miller*, 2008 WY 45, ¶ 21, 180 P.3d 925, 932 (Wyo. 2008) (discussing procedure for *sua sponte* dismissals to avoid prejudice to plaintiff). The same is true here. Neither party presented argument on the issue of PRM's negligence in hiring Hot Oil. Thus, the district court violated Rule 56 and Basic

---

[10] The difficulty for the district court in this case arose due to PRM's motion for summary judgment which ostensibly moved for full judgment on Basic Energy's amended complaint, but in reality, presented only a motion for partial summary judgment because it did not advance any argument on Basic Energy's negligent hiring claim. *See Mitseff*, 526 N.E.2d at 802. Regardless, the district court erred when it granted summary judgment on an issue not presented. *Matsukis v. Joy*, 377 S.W.3d 245, 250-51 (Ark. 2010); *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 700 N.E.2d 94, 100 (Ohio Ct. App. 1997).

Energy's due process rights when it granted judgment on this claim.[11]  We therefore reverse and remand on this issue.

[¶21]  Because the issue of negligent hiring in the context of independent contractors is a novel issue for this Court, we take this opportunity to provide guidance to the district court when addressing it on remand.  It is well established that one who employs an independent contractor is not generally liable for the contractor's negligent acts.  *Singer v. New Tech Engineering L.P.*, 2010 WY 31, ¶ 9, 227 P.3d 305, 309 (Wyo. 2010); *Franks v. Indep. Prod. Co., Inc.*, 2004 WY 97, ¶ 10, 96 P.3d 484, 490 (Wyo. 2004).  This precedent is grounded in the theory of *respondeat superior* and the rationale behind it—a principal should be held responsible for the acts of an agent who is under the principal's control.  *Stockwell v. Morris*, 46 Wyo. 1, 8, 22 P.2d 189, 190 (Wyo. 1933).  When an owner/operator hires an independent contractor, however, it relinquishes control over the methods employed to complete the work.  *Franks*, 2004 WY 97, ¶ 10, 96 P.3d at 490.  The doctrine of *respondeat superior* does not apply to the acts of an independent contractor because the owner/operator has no control over the work performed.  41 Am. Jur. 2d *Independent Contractors* § 27 (2005).

[¶22]  Negligent hiring, however, is not premised on the theory of *respondeat superior*, but instead rests on the owner/operator's own negligent acts in hiring the independent contractor.  *Becker v. Poling Transp. Corp.*, 356 F.3d 381, 389 (2d Cir. 2004); *Wagner v. SFX Motors Sports, Inc.*, 460 F. Supp. 2d 1263, 1270 (D. Kan. 2006).  In *Cranston v. Weston County Weed and Pest Board*, 826 P.2d 251, 258 (Wyo. 1992), we recognized the tort of negligent hiring and "accepted the special definition" set forth in the Restatement (Second) of Agency § 213:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> ******
>
> (b) in the employment of improper persons or instrumentalities in work involving the risk of harm to others.

*Cranston*, 826 P.2d at 258 (quoting Restatement (Second) of Agency § 213 (1958)).  *Cranston* was a unique case, and involved the negligent appointment of board members by county commissioners.  *Id.*  We found that though "the Commissioners were not

---

[11] This holding does not alter our case law permitting summary judgment to be granted to a nonmoving party.  *See City of Powell v. Busboom*, 2002 WY 58, ¶ 6, 44 P.3d 63, 65 (Wyo. 2002).  "The district court can grant summary judgment on an issue to the party who opposes a motion for summary judgment **so long as the issue was completely presented to the district court**."  *Union Pac. R.R. Co.*, 2011 WY 24, ¶ 33 n.4, 246 P.3d at 876 n.4 (emphasis added).

'conducting an activity through servants or other agents'" as contemplated by § 213, the theory of negligent hiring was nonetheless applicable. *Id.*

[¶23] While *Cranston* is not directly on point, we find that its holding is logically extended to hiring independent contractors. Our precedent supports this conclusion. In *Cline v. Sawyer*, 618 P.2d 144, 145-46 (Wyo. 1980), we addressed whether sufficient evidence was presented to demonstrate Cline's negligence in installing water and sewer utilities in a mobile home park. Cline employed an architect to draw up plans for the installation, and we stated, "Architects are generally considered to be independent contractors. And, as a general rule, the employer of an independent contractor is not responsible for the contractor's inadequate acts ***unless the employer did not use due care in selecting that contractor***." *Id.* at 148 (emphasis added). Our analysis of this issue, however, was limited, as "[e]vidence of negligence in selection of the architect or contractor was not presented in this case." *Id.* Nevertheless, *Cline* indicates our recognition of the theory of negligent hiring of independent contractors.

[¶24] A survey of other jurisdictions also reveals that the theory of negligent hiring in the context of independent contractors has gained broad acceptance. "'The rule has been widely adopted that an employer of an independent contractor may be liable to one injured as a result of the contractor's fault where it is shown that the employer was negligent in selecting a careless or incompetent person with whom to contract.' Courts across the country have uniformly adopted this rule." *Western Stock Ctr., Inc. v. Sevit, Inc.*, 578 P.2d 1045, 1048 (Colo. 1978) (quoting 8 A.L.R. 2d 267 § 1); *see also* Reuben I. Friedman, *When is employer chargeable with negligence in hiring careless, reckless, or incompetent independent contractor*, 78 A.L.R. 3d 910 (1977); *Fry v. Diamond Const. Inc.*, 659 A.2d 241, 248 (D.C. 1995). Many of these courts rely on the Restatement (Second) of Torts § 411 (1965), which states:

> § 411. Negligence in Selection of Contractor.
>
> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
>     (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
>     (b) to perform any duty which the employer owes to third persons.

*Becker*, 356 F.3d at 389; *Puckrein v. ATI Transport, Inc.*, 897 A.2d 1034, 1041-42 (N.J. 2006); *Dexter v. Town of Norway*, 715 A.2d 169, 172 (Me. 1998); *King v. Lens Creek Ltd. P'ship*, 483 S.E.2d 265, 269-70 (W. Va. 1996); *Bagley v. Insight Commc'ns Co.,*

*L.P.*, 658 N.E.2d 584, 586-87 (Ind. 1995); *Phillip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 399 (Va. 1988). Because § 411 comports with our decisions in both *Cranston* and *Cline*, we likewise adopt the Restatement (Second) of Torts § 411.

[¶25]  While § 411 describes the negligent conduct of the owner/operator which must be proven to succeed on a negligent hiring claim, a plaintiff must also prove the underlying tortious conduct of the independent contractor.  In *Cranston*, we set forth the elements of a claim of negligent hiring.  826 P.2d at 258-59.  Basic Energy must establish that: (1) PRM was negligent in hiring Hot Oil, pursuant to the Restatement (Second) of Torts § 411; (2) Hot Oil or its servants negligently caused Basic Energy's injury; and (3) PRM's negligence in hiring Hot Oil was the proximate cause of Basic Energy's injury.  *Id.* at 258-59.  We remand with instructions to the district court to consider Basic Energy's negligent hiring claim in light of this opinion.

### III.   Did Basic Energy raise the issue of apparent agency in the district court?

[¶26]  On appeal, Basic Energy argues that Hot Oil was an apparent agent of PRM, and that PRM must therefore be held vicariously liable for the actions of Hot Oil.  Basic Energy, however, failed to raise apparent agency as an issue in the pleading stage, or any other stage, of the litigation.  We are therefore precluded from considering the issue here. *Howard v. Howard*, 452 N.W.2d 283, 285 (Neb. 1990) ("A judgment based upon an issue not pleaded is a nullity."); *Standard Roofing Co. v. Dean Constr. Co.*, 324 S.E.2d 334, 335 (S.C. Ct. App. 1984) ("Judgments not supported by the theor[ies] of action on which the pleadings [are] framed [are] fatally defective.") (internal quotation marks omitted)). W.R.C.P. 8 requires that we liberally construe pleadings to do substantial justice, but there is nothing to liberally construe in this case.  The amended complaint is completely devoid of any mention of apparent agency, and we cannot insert averments into a pleading in order to address an issue presented for the first time on appeal.  *See Kearney Lake, Land & Reservoir Co. v. Lake DeSmet Reservoir Co.*, 475 P.2d 548, 552 (Wyo. 1970) ("The simplification of pleadings under our rules . . . cannot be taken to eliminate the necessity of stating in clear terms the nature and basis of the relief sought.").

[¶27]  Basic Energy did assert in its amended complaint that Hot Oil was an actual agent of PRM, but it made no allegations relating to Hot Oil as an apparent agent of PRM. While agency and apparent agency are related, they are not interchangeable.   When determining whether there is an agency relationship between two parties, we examine a number of factors, including the amount of control the principal wields over the agent. *Brubaker v. Glenrock Lodge Int'l. Order of Odd Fellows*, 526 P.2d 52, 57 (Wyo. 1974). To prove apparent agency, on the other hand, the right of control is not at issue.  Instead, we consider: (1) whether the apparent agent has been represented as a servant or agent of the apparent principal; (2) whether the injured party relied upon the care and skill of the apparent agent; and (3) whether the injury was caused by the lack of care or skill of the apparent agent.  *Sharsmith v. Hill*, 764 P.2d 667, 672 (Wyo. 1988) (quoting Restatement

(Second) of Agency § 267 (1958)). Nothing in Basic Energy's amended complaint indicates that it intends to put apparent agency at issue. *See Forbes v. Forbes*, 2015 WY 13, ¶¶ 38-44, --- P.3d ---, --- (Wyo. 2015) (finding that the pleading did not provide fair notice to the opposing party of the plaintiff's claim); *see also Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 12, 297 P.3d 110, 114 (Wyo. 2013) (stating that notice pleading requires that fair notice be given to the defendant). This is fatal to its apparent agency argument.

[¶28] Moreover, we have often repeated:

> We strongly adhere to the rule forbidding us to 'consider for the first time on appeal issues that were neither raised in, nor argued to, the trial court,' except for those issues which are jurisdictional or are fundamental in nature. *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo. 1991). We follow this rule because 'it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Id.*

*Bredthauer v. TSP*, 864 P.2d 442, 446-47 (Wyo. 1993); *see also SAS v. Dep't of Family Servs. (In re AGS)*, 2014 WY 143, ¶ 33, 337 P.3d 470, 480 (Wyo. 2014); *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo. 2005); *EBH v. Hot Springs Dep't of Family Servs. (In re IH)*, 2001 WY 100, ¶ 25, 33 P.3d 172, 182 (Wyo. 2001); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000); *WW Enters., Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998). Apparent agency is not a jurisdictional issue, nor one that implicates fundamental rights. We therefore refuse to address it for the first time on appeal.

### IV. *Should the well owner, PRM Partners, be dismissed from the appeal?*

[¶29] Basic Energy asserts that it is "no longer pursuing its claim against PRM Partners on this appeal." In response, PRM Partners states that it has "no objection to its voluntary dismissal and respectfully requests that it be dismissed from this appeal."

[¶30] PRM Partners asks that we dismiss it from the appeal pursuant to W.R.A.P. 18, which provides:

> If the parties to an appeal or other proceeding shall sign and file with the clerk of the appellate court an agreement that the proceeding be dismissed, specifying the terms as to payment of costs, and shall pay whatever fees are due, the clerk shall enter the case dismissed, but no mandate

or other process shall issue without an order of the appellate court. An appeal may be dismissed on motion of the appellant upon such terms as may be agreed upon by the parties or fixed by the appellate court.

Under W.R.A.P. 18, an appeal can be voluntarily dismissed if either: the parties file an agreement with the clerk of the appellate court, or the appellant moves for a dismissal. The parties did not file a separate agreement, but they did both concede that the appeal, as it pertains to PRM Partners, is no longer being pursued. We therefore dismiss PRM Partners from the appeal.

## *CONCLUSION*

[¶31] We affirm the district court's entry of summary judgment against Basic Energy on the issue of whether PRM breached the Daily Work Ticket term requiring that Basic Energy bill PRM for damages to equipment, but find that PRM failed to present a *prima facie* case on whether PRM breached the Daily Work Ticket by failing to provide required safety equipment. We therefore reverse and remand on the issue of whether PRM breached the contract. We reverse and remand on Basic Energy's claim that PRM acted negligently in hiring Hot Oil. Because Basic Energy raises the issue of apparent agency for the first time on appeal, we refrain from addressing it. Finally, we order that PRM Partners be dismissed from the appeal.