2007 WY 61

**Shannon and Vincent WILD, Appellants (Petitioners),**

v.

**Karena D. ADRIAN, Appellee (Defendant).**

No. 06–183.

Supreme Court of Wyoming.

April 13, 2007.

Representing Appellants: Sean W. Scoggin of Tiedeken & Scoggin, P.C., Cheyenne, Wyoming.

Representing Appellee: Raymond D. Macchia and Juliana Hernandez of Macchia & Assoc., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Bryan and Karena Adrian were divorced in 2002. The district court awarded the parties joint legal custody and Mr. Adrian primary physical custody of their two children. The children lived with their father until 2005 when, due to his military service assignment, he placed them in the custody of Shannon and Vincent Wild. After Mr. Adrian died in 2006, the Wilds sought to intervene in the divorce proceeding to have the custody order modified to award them custody of the children. Alternatively, they sought appointment as guardians of the children. They appeal from the district court's denial of their petition. We affirm.

## ISSUE

[¶ 2] The following issue is determinative of this appeal: Whether the district court properly denied the Wilds' petition to intervene in the divorce proceeding.

## FACTS

[¶ 3] After the Adrians' divorce in 2002, Mr. Adrian and the children lived in Colorado. At that time, he was a pilot with the

Wyoming Air National Guard. In 2005, he was transferred to the Alaska Air National Guard. On August 23, 2005, prior to the date of his actual transfer, Mr. Adrian executed a document entitled "Durable Special Power of Attorney" in which he appointed the Wilds as his "Attorneys–in–Fact" and the "Guardians/Loco Parentis" of his children. After Mr. Adrian executed the document, the children lived with the Wilds in Colorado. Mr. Adrian died suddenly on February 15, 2006, while stationed in Texas. The Adrians' settlement agreement, which the district court approved and incorporated into the divorce decree, provided that in the event of either parent's death, custody of the children would vest automatically in the surviving parent. Thus, pursuant to the decree, custody of the children automatically vested in Mrs. Adrian upon Mr. Adrian's death.

[¶ 4] Immediately following Mr. Adrian's death, the Wilds sought and obtained an emergency order in Colorado district court granting them temporary custody of the children. However, the Colorado court concluded the Wilds' claims properly belonged in Wyoming where the divorce decree and the original custody determination were issued. Therefore, the Colorado court's temporary custody order was limited to twenty days, enough time to allow the Wilds to apply for relief in Wyoming.

[¶ 5] The Wilds filed a petition in the Laramie County district court for an order allowing them to intervene in the Adrian divorce action. They alleged the facts of the divorce,[1] Mr. Adrian's act of placing the children in their physical custody, his subse-/quent death and the temporary custody order issued in Colorado. The Wilds also filed a petition for an order modifying the custody order and granting them temporary custody of the Adrian children. Alternatively, the Wilds sought in their petition to be appointed guardians of the children. The district court granted the motion for temporary custody, finding that it was in the best interest of the children to remain in Colorado with the Wilds to finish the school year. The district

court indicated it would convene a hearing for consideration of whether custody in the Wilds should continue beyond the end of the school year and the other issues asserted in the petition.

[¶ 6] Several weeks later, the Wilds filed a petition for an emergency order in which they alleged that Mrs. Adrian had come to Colorado and taken the children from them in violation of the temporary custody order. They sought an order requiring Mrs. Adrian to return physical custody of the children to them, to restrict her contact with the children and to hold her in contempt for violating a court order. No order on the petition appears in the record filed with this Court; however, the parties agree and a later order suggests that the district court ordered Mrs. Adrian to return the children to the Wilds and she complied.

[¶ 7] On May 17, 2006, without having convened a hearing, the district court entered an order denying the Wilds' petitions to intervene, to modify custody and to hold Mrs. Adrian in contempt. The district court found in pertinent part that the Wilds did not have standing to intervene in the Adrian divorce proceeding; Mrs. Adrian was the sole legal custodian of the children by operation of law and the divorce decree; and denial of the request to hold Mrs. Adrian in contempt was in the interest of justice. The Wilds appealed from the district court order.

## STANDARD OF REVIEW

 [¶ 8] The decision whether to grant or deny a motion to intervene as of right involves mixed questions of law and fact. *Platte County School Dist. No. 1 v. Basin Electric Power Coop.*, 638 P.2d 1276, 1279 (Wyo.1982). We review decisions involving questions of law *de novo*. *Seherr–Thoss v. Seherr–Thoss*, 2006 WY 111, ¶ 11, 141 P.3d 705, 712 (Wyo.2006). We defer to the district court's factual findings unless they are clearly erroneous. *Maycock v. Maycock*, 2001 WY 103, ¶ 11, 33 P.3d 1114, 1117 (Wyo.2001). A finding is clearly erroneous when, although there is evidence to sup-

---

1. The Wilds incorrectly alleged the divorce decree gave Mr. Adrian "sole legal custody" of the children. In fact, the decree awarded the parties joint legal custody and Mr. Adrian primary residential and physical custody.

port it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

## DISCUSSION

### *The Right to Intervene*

■ [¶ 9] In their petition to intervene in the Adrian divorce action, the Wilds alleged that they had standing to request modification of the custody order pursuant to Wyo. Stat. Ann. § 20–2–203(a) (LexisNexis 2005)[2] because at the time they filed their petition they had acted as parents for the children and the children had been in their physical custody for at least the last six months. On appeal, they claim they were entitled to intervene pursuant to W.R.C.P. 24, which provides as follows:

(a) *Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) *Permissive intervention.*—Upon timely application anyone may be permitted to intervene in an action:

(1) When a statute confers a conditional right to intervene; or

(2) When an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will

unduly delay or prejudice the adjudication of the rights of the original parties.

[¶ 10] Perhaps recognizing that no Wyoming statute allowed them to intervene either conditionally or unconditionally in the Adrian divorce proceeding,[3] the Wilds do not contend they were entitled to intervene pursuant to Rule 24(a)(1) or (b)(1). Rather, they claim they should have been allowed to intervene under Rule 24(a)(2) or (b)(2). For intervention as of right under subsection (a)(2), four conditions must be satisfied:

First, the applicant must claim an interest related to the property or transaction which is the subject of the action. Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately represented by the existing parties. Fourth, the application for intervention must be timely. An applicant who fails to meet any one of these conditions is not permitted to intervene as of right under W.R.C.P. 24(a)(2).

*Masinter v. Markstein*, 2002 WY 64, ¶ 7, 45 P.3d 237, 240 (Wyo.2002).

■ [¶ 11] The interest claimed by an applicant seeking to intervene as of right must be a significant protectable interest. *Platte County School Dist.*, 638 P.2d at 1279. A contingent interest will not suffice. The question, therefore, is whether the Wilds had a significant protectable interest in custody of the Adrian children to allow them to intervene as of right. We conclude they did not and the district court properly denied their motion to intervene.

[¶ 12] In *MBB v. ERW*, 2004 WY 134, ¶ 12, 100 P.3d 415, 419 (Wyo.2004), we held that only those persons specifically granted

---

2. Section 20–2–203(a) provides in relevant part:

(a) A court in this state which enters a custody order under W.S. 20–2–201 has continuing subject matter jurisdiction to enforce or modify the decree concerning the care, custody and visitation of the children as the circumstances of the parents and needs of the child require, subject to the provisions of the Uniform Child

Custody Jurisdiction and Enforcement Act. * * * *

3. Wyo. Stat. Ann. § 20–2–204(a) (LexisNexis 2005) provides:

Either *parent* may petition to enforce or modify any court order regarding custody and visitation.

[Emphasis added]

standing by statute could petition the court to modify a child custody order. In that case, an unmarried mother gave birth to a son, J.S. From the time J.S. was seven months old until he was six years old, mother and J.S. lived with Michael Bisiar. Another child, J.B., was born during this time. Genetic testing established father's paternity with respect to J.S. Mother and father stipulated that father would have primary custody of J.S. and the district court entered an order reflecting the parties' agreement. Mr. Bisiar filed a petition for modification of the order seeking an order allowing him and J.B. visitation with J.S. We said:

> A parent's right to associate with and make decisions concerning the care, custody and control of his or her children is a fundamental right protected by the Wyoming and United States Constitutions. The Wyoming legislature has created only two exceptions, other than in juvenile court matters, where non-parents may be granted visitation with children. Those exceptions are for grandparents and primary caregivers. Because Bisiar and J.B. fall into neither of these categories, they did not have standing to bring an action to set aside the district court's custody order or to request that they be awarded visitation.

*Id.,* ¶ 14, 100 P.3d at 419.

[¶ 13] As indicated, *MBB* involved a non-parent's attempt to obtain *visitation* with, not custody of, a child. Despite this difference, our holding in *MBB* applies equally where a non-parent seeks to obtain custody of a child. The Wyoming legislature has created no exception, other than a juvenile proceeding brought by the state, where non-parents may petition for custody of a child. Because § 20–2–204(a) allows only *parents* to petition to modify a court order regarding custody, the Wilds did not have standing to intervene as of right in the divorce proceeding to modify the original custody determination.

■ [¶ 14] Alternatively, the Wilds claim they were entitled to permissively intervene in the Wyoming divorce proceeding pursuant to Rule 24(b)(2), which required that their claim have a question of law or fact in common with the Adrians' custody determina-

tion. Clearly, the Wilds' claim and the original custody proceeding concerned a common question, i.e. custody of the Adrian children. However, the Wilds' permissive intervention claim faced the same difficulties as their claim for intervention as of right under Wyoming law—a non-parent does not have standing to request modification of a custody order. We conclude the district court did not err in denying intervention under Rule 24(b)(2).

■ [¶ 15] In their petition to intervene, the Wilds alternatively sought to be appointed as guardians of the Adrian children pursuant to Wyo. Stat. Ann. § 3–2–101, et seq. (LexisNexis 2005). We find no statutory or judicial authority in Wyoming allowing a non-parent to intervene in a divorce proceeding for the purpose of being appointed as guardian for the children from the marriage. We are not inclined to create such a right under these circumstances, where the petition to intervene sought to deprive Mrs. Adrian of her fundamental right to make decisions concerning the care, custody and control of her children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents. . . ." *KO v. LDH (In re MEO),* 2006 WY 87, ¶ 21, 138 P.3d 1145, 1152 (Wyo.2006). Under the circumstances, we affirm the district court's order denying the Wilds' petition to intervene.

■ [¶ 16] The Wilds also claim that it was error for the district court to deny their petition to intervene without a hearing. In support of their claim, they cite child custody and guardianship statutes which require a hearing before a court may determine custody or appoint a temporary guardian. They cite no authority indicating that a hearing is required before a court may rule on a petition to intervene. Our research indicates a court may deny a request for an evidentiary hearing when it is clear from the record that the petitioner is not entitled to intervene. *Kneeland v. Nat'l Collegiate Athletic Ass'n,* 806 F.2d 1285, 1289 (5th Cir.1987). We conclude it was clear from the record that the Wilds were not entitled to intervene in the Adrian divorce proceeding. Therefore, the district court did not err in denying the

Wilds' petition to intervene without a hearing.[4]

[¶ 17] Affirmed.

---

4. The parties presented other issues for determination by this Court. Our resolution of the intervention issue makes consideration of those issues unnecessary.