# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 78

APRIL TERM, A.D. 2016

August 9, 2016

JOHN M. ZUPAN, JR.,

Appellant
(Plaintiff),

v.

S-15-0259

HEATHER M. ZUPAN,

Appellee
(Defendant).

*Appeal from the District Court of Hot Springs County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
Amanda K. Roberts of Lonabaugh and Riggs, LLOP, Sheridan, WY; and Bobbi D. Overfield of Messenger & Overfield, P.C., Thermopolis, WY.

*Representing Appellee:*
Wendy Press Sweeney, Worland, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Father challenges an order modifying his child support obligation and argues that Mother did not show a material change in circumstances to justify that modification. Father also contends that even if a modification was appropriate, the district court miscalculated the amount.  We will affirm.

## ISSUES

[¶2]    Father presents two issues for our review:

1. Modification of Child Support was improper pursuant to the Smith Rule.
2. Even if Modification of Child Support was appropriate, the district court erred in its determination of Father's child support obligation.

## FACTS

[¶3]    Father and Mother married in 1996 and had two children, a girl born in 1997 and a boy born in 2000.  The parties divorced in 2004 and agreed to share custody.  Their agreement provided that they would alternate residential custody on an annual basis, with the custody exchange taking place on July 15 of every year.  The parties also agreed that Mother would not pay child support, while Father would pay $500 monthly while the children lived with Mother.  The agreement was to expire on July 15, 2008 and per the agreement, the parties were to seek mediation if they could not agree on a custody arrangement moving forward.  As it turns out, in 2008 Mother sought to hold Father in contempt for failing to mediate.  That was denied in district court, where the court also held that the former custody and child support arrangement should continue.  Mother appealed, and this Court affirmed in *Zupan v. Zupan,* 2010 WY 59, 230 P.3d 329 (Wyo. 2010).

[¶4]    In June of 2011, the parties stipulated to a modification of custody.  The modification provided that daughter would live with Mother permanently, while son would continue with shared custody.  Father would pay $250 per month in child support for daughter, and an additional $250 while both children lived with Mother.  This matter began in 2012 when Father filed a Motion for Order to Show Cause, seeking to hold Mother in contempt for failing to pay unreimbursed medical expenses for the children. On May 4, 2012, Mother counterclaimed to modify child support and requested that the modification be retroactive to the date Father was served with the counterclaim.  After a hearing, the district court entered its "Order Granting in Part and Denying in Part Plaintiff's Motion for Order to Show Cause and Order Modifying Judgment and Decree of Divorce."  The district court determined that Father owed $18,813.81 in retroactive

1

child support from May of 2012 to January of 2015. The court offset that amount by unreimbursed medical expenses Mother owed to Father in the amount of $2,069.16. The court ruled no accrual of interest would occur if Father paid Mother within 60 days of entry of the order. The court further ruled that beginning on June 1, 2015, Father would pay monthly child support in the amount of $466.55 for the parties' son. Father's appeal followed this ruling.

## STANDARD OF REVIEW

[¶5]   Our standard of review in child support cases is well established:

> In general, determinations concerning child support are left to the district court's sound discretion. *Verheydt v. Verheydt*, 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013); *Witowski v. Roosevelt*, 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo. 2009). Consequently, we will not disturb the district court's decision unless it abused its discretion. "In determining whether an abuse of discretion occurred, our core inquiry is the reasonableness of the district court's decision." *Verheydt*, ¶ 19, 295 P.3d at 1250; *Hanson v. Belveal*, 2012 WY 98, ¶ 14, 280 P.3d 1186, 1192 (Wyo. 2012).

*Bagley v. Bagley*, 2013 WY 126, ¶ 6, 311 P.3d 141, 143 (Wyo. 2013).

[¶6]   " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Rodenbough v. Miller*, 2006 WY 19, ¶ 8, 127 P.3d 800, 802 (Wyo. 2006); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)); *Watson v. Watson*, 2002 WY 180, P4, 60 P.3d 124, 125 (Wyo. 2002); *Groenstein v. Groenstein*, 2005 WY 6, ¶ 10, 104 P.3d 765, 768-69 (Wyo. 2005).

## DISCUSSION

### Child Support Modification

[¶7]   Father argues that the modification of child support was improper pursuant to the '*Smith*' rule. In *Smith v. Smith*, 895 P.2d 37 (Wyo. 1995) and its progeny, we concluded that when parties agree to a child support amount, even when that amount deviates 20% from the presumptive support amount, the petitioner for modification must show both (1) a 20% change in the amount of support and (2) a material change in circumstances. We extensively explained *Smith* in *Wright v. Wright*, 5 P.3d 61, 63 (Wyo. 2000):

2

In *Smith,* Mr. Smith initially entered into an agreement with Mrs. Smith to pay $5,000 per month in child support, even though that was an amount many times greater than the presumptive level of support. Later, the Smiths reached a second agreement which reduced Mr. Smith's child support obligation to $3,000 per month, an amount which was still many times greater than the presumptive support level. Mr. Smith then sought an adjustment of his child support obligations to bring them into line with the statutory level of presumptive child support. Based on those facts, we held that Wyo. Stat. Ann. § 20-6-302:

> invokes the discretion of the trial judge, in the modification hearing, to weigh the enumerated thirteen factors and also the presence or absence of an agreement in the light of the policy favoring finality. In instances in which the parties have arrived at an agreement as to child support previously, even when the support agreed to deviates by more than twenty percent from the presumptive guidelines, the petitioner must introduce other evidence of a material change in circumstances in order to justify a modification. *Smith,* 895 P.2d at 42.

This Court then attempted to clarify the rule set forth above in *Smith* to apply "only to cases in which the parties entered into a stipulation to child support amounts before the current guidelines were enacted but which deviated from the guidelines in existence at that time, and to stipulated child support amounts under the current guidelines which deviate from the current guidelines by twenty percent or more at the time the judgment was entered." *Sharpe,* 902 P.2d at 213. Thus, as clarified by *Sharpe,* the rule in *Smith* became: In instances in which the parties have arrived at an agreement as to child support previously, and when the support agreed to deviates by more than 20% from the presumptive guidelines, the petitioner must introduce other evidence of a material change in circumstances, in addition to a present 20% deviation, in order to justify a modification.

This rule attempts to eliminate the possible evil of a non-custodial parent agreeing to pay child support which exceeds 20% deviation to secure a custodial parent's signature on a stipulation, only to come back to court within six months and

3

ask for modification based upon a 20% deviation. Or, in the alternative, to prevent a custodial parent from agreeing to a child support amount which exceeds a 20% deviation below the guidelines to secure a non-custodial parent's signature on a stipulation, only to come back within six months asking for modification based only upon a 20% deviation. This rule does not apply to situations in which the child support amount agreed to by the parties did not exceed a 20% deviation one way or another from the guidelines in existence at the time the stipulation was executed. Where the agreement reached by the parties with respect to child support is predicated upon the operation of the presumptive child support statute, *Smith* and *Sharpe* play no role in the process of review and adjustment of child support as provided for in § 20-6-306(a).

With regard to modifying child support, Wyo. Stat. § 20-2-311(a) (LexisNexis 2015) provides three methods under which a support modification may be proven: (1) support order in place for six months and a 20% change in the presumptive support amount; (2) at any time, based on a substantial change in circumstances; and (3) either parent may request review of a child support order "[e]very three (3) years."

[¶8]    Here, we agree with Father's suggestion that Mother was required under *Smith* to prove a material/substantial change in circumstances.  While Mother did not allege that a material change in circumstances had occurred, nor did the district court make such a finding in its order, we believe that a material change did in fact occur.  When Mother filed her petition "when the parties' custodial arrangement changed," she in effect made the argument that a change had taken place.  The custody change she alleged is more than enough to establish a change in circumstances, even without a specific finding from the district court in that regard.  Nonetheless, the district court explicitly found a 20% increase in the presumptive support amount when it calculated Father's new child support obligation at $466.55 per month.  Accordingly, both requirements of *Smith* are satisfied.  Having concluded that the modification was proper, we turn to the actual determination of the child support obligation.

**Calculation of Income for Determination of Child Support**

[¶9]    Presumptive child support amount is calculated using the parents' net income. *Bagley,* ¶ 15, 311 P.3d at 145:

> "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments

4

being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

Wyo. Stat. Ann. § 20-2-303(a)(iii) (LexisNexis 2013).

[¶10] Under that same statute, "income" means:

[A]ny form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed[.]

Wyo. Stat. Ann. § 20-2-303(a)(ii) (LexisNexis 2015).

[¶11] Regarding his income, Father complains that the district court should have determined his net income separately for 2012, 2013, and 2014 because those years experienced different highs and lows based on the respective economies from year to year. He also argues that the court improperly imputed income to him from his rental properties, health insurance premiums paid by his company, and life insurance policy payments. Regarding Mother's income, Father argues that the court erred in allowing Mother improper deductions for home office space, utilities, home internet, and her cell phone. Father contends that while those deductions are appropriate for federal tax purposes, only "legitimate business expenses" may be deducted for purposes of

5

calculating income for child support, and that regardless of her employment, Mother would nevertheless incur those expenses. To conclude, Father submits that his retroactive support should total $1,404.06 and that his monthly support obligation going forward should be $30.66 per month

[¶12] During a bench trial, much of the evidence presented concerned the parties' income. Ultimately, after the trial and after considering each parties' proposed Findings of Fact and Conclusion of Law, the district court found Father's net monthly income to be $8,403.00 and Mother's to be $3,622.00. Also in its order, the court made findings regarding the parties' financial sources. The court noted that Father is "a self-employed electrical plumbing contractor and the sole owner of Zupan Electric, Inc. Father controls his rate of pay, benefits, provision of health insurance and the like."

[¶13] First, regarding Father's argument about Mother's financials – and specifically, the deductions she takes to arrive at her net income − we cannot say the district court's decision was an abuse of discretion. This Court has reiterated several times that there is no "per se prohibition … on the use of federal tax information as evidence in determining 'income' and 'net income' under the Wyoming child support statutes." *Ackerman v. Ott*, 2014 WY 93, ¶ 12, 330 P.3d 271, 274 (Wyo. 2014) (quoting *Ready v. Ready*, 2003 WY 121, ¶ 16, 76 P.3d 836, 840 (Wyo. 2003)).

> In fact, in all child support proceedings, the parties are required to submit to the court financial affidavits with supporting documentation that includes copies of their most recent tax returns. Thus, it is clear from case law that the focus should be upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes.

*Ackerman*, ¶ 12, 330 P.3d 271, 274. Furthermore, "when determining which business deductions to allow for the purposes of determining child support, a court is not bound by the tax laws." 2 Jeff Atkinson, *Modern Child Custody Practice*, Second Edition, Ch. No. 11, § 11-27 (2014). Although deductions for things such as a "home office" should be subject to scrutiny, they should not be categorically disallowed. Accordingly, to de facto prohibit all deductions for rent, utilities, and repairs, when the record clearly indicates that such expenses occurred and were necessary, also would be error.

[¶14] As to Father's argument about his income being improperly computed, we also cannot find an abuse of discretion by the district court. As Father points out, the district court had ample information and heard sufficient testimony regarding Father's income. Father also contends that his incomes over several years should have been averaged in

order to compute his child support obligation. It is true that we have approved income averaging for the purpose of calculating child support "where circumstances require it." *Madison v. Madison,* 859 P.2d 1276, 1280 (Wyo. 1993); *Triggs v. Triggs,* 920 P.2d 653, 662 (Wyo. 1996); *Bollig v. Bollig,* 919 P.2d 136, 138 (Wyo. 1996); *Wood v. Wood,* 964 P.2d 1259, 1264 (Wyo. 1998). However, this is not to say income averaging is **mandated** in all circumstances showing income fluctuation. Accordingly, the district court did not abuse its discretion in deciding to use only one year of income figures. Our careful review of the record demonstrates that the district court took into account all relevant and available information in reaching its determination of Father's income level.

### Unreimbursed Medical Expenses

[¶15] Mother argues in her brief that she should have been credited for unreimbursed medical expenses. However, she cannot seek a change in the district court's ruling on this issue at this time, inasmuch as she did not cross-appeal. As we explain in *GOB, LLC v. Rainbow Canyon, Inc.,* 2008 WY 157, ¶ 10, 197 P.3d 1269, 1271-72 (Wyo. 2008):

> "The distinction between arguing in brief and cross-appealing generally is that a cross-appeal is required to win a change in the judgment, while arguments to support the judgment can be made without a cross-appeal." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 4478.6, at 831 (2002). A survey of cases before this Court involving cross-appeals bears out this distinction. For example, in *Garrison v. CC Builders, Inc.*, the appellees prevailed below, but cross-appealed contending that the damage award was incorrect. 2008 WY 34, ¶ 26, 179 P.3d 867, 875 (Wyo. 2008). In *Diamond B Svcs., Inc. v. Rohde*, the Department of Employment granted a worker's request for unpaid wages but denied an award for interest on the unpaid wages, costs, and attorney fees. 2005 WY 130, ¶¶ 1-2, 120 P.3d 1031, 1035 (Wyo. 2005). The employer appealed the award of unpaid wages, and the worker cross-appealed the denial of interest on the unpaid wages, costs, and attorney fees. *Id*. Our history includes many similar examples. *E.g.*, *Wells Fargo Bank v. Hodder*, 2006 WY 128, 144 P.3d 401 (Wyo. 2006) (Trust beneficiaries sued Trustee alleging breach of fiduciary duty. Beneficiaries prevailed and Trustee appealed. Beneficiaries cross-appealed seeking attorney fees and prejudgment interest.); *Wallop v. Wallop*, 2004 WY 46, 88 P.3d 1022 (Wyo. 2004) (Wife appealed property division in a divorce. Husband cross-appealed contending that the district court made a mathematical error when it calculated

the wife's share of an annuity benefit.); *Warnick v. Warnick*, 2003 WY 113, 76 P.3d 316 (Wyo. 2003) (Partner sued partnership and remaining partners. Plaintiff partner prevailed on summary judgment and was awarded value of the partnership. Defendants appealed the summary judgment, and the plaintiff appealed the court's calculation of the partnership share value.).

*Sanctions*

[¶16] Finally, Mother suggests that it would be appropriate to award her costs and attorney fees under Wyoming Rule of Appellate Procedure 10.05. That rule provides: "[i]f the court certifies … there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." W.R.A.P. 10.05(b).

[¶17] Sanctions under Rule 10.05 are generally not available for challenges to discretionary rulings, unless "an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record." *Welch v. Welch*, 2003 WY 168, ¶ 13, 81 P.3d 937, 940 (Wyo. 2003) (citations omitted). Although unsuccessful on appeal, Father's efforts were reasonable. Mother's request for Rule 10.05 sanctions is denied.

## CONCLUSION

[¶18] We affirm the district court. Our review of the record shows that the district court was within its discretion in calculating both Father's and Mother's net income for child support purposes.